# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9134 | **DATE** | October 8, 2003 |
| **CASE TITLE** | Calderon v. Southwestern Bell Mobile | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion to dismiss [9-1] is granted, and the complaint is dismissed. Counts I, III, IV, VII, VIII, X, and XI are dismissed without prejudice, and Counts II, V, VI, and IX are dismissed with prejudice. Plaintiff may file an amended complaint by November 5, 2003, and is advised that any amended complaint must comply with the pleading requirements outlined in this opinion. ENTER MEMORANDUM OPINION.

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices MAILED by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 1 0 2003 | 18 |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to _____ | | | |
| KAM | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | KAM mailing deputy initials | |

(Reserved for use by the Court)

02-9134.031-JCD                                    October 8, 2003

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**



OCT ⁱ Ü 2003

| | |
|---|---|
| GUSTAVO R. CALDERON, an individual,) <br> d/b/a AIRBORNE BEEPERS & VIDEO, ) <br> INC., an Illinois corporation, ) <br> ) <br>     Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> SOUTHWESTERN BELL MOBILE SYSTEMS, ) <br> LLC, d/b/a CINGULAR WIRELESS, ) <br> f/k/a SOUTHWESTERN BELL MOBILE ) <br> SYSTEMS, INC. d/b/a CELLULAR ) <br> ONE-CHICAGO, ) <br> ) <br>     Defendant. ) | No. 02 C 9134 |

### MEMORANDUM OPINION

Before the court is defendant's motion to dismiss the complaint. For the following reasons, the motion is granted.

### BACKGROUND

This is an action brought by plaintiff "Gustavo R. Calderon, doing business as Airborne Beepers & Video, Inc." against defendant Southwestern Bell Mobile Systems, LLC, doing business as Cingular Wireless ("Cingular"). Plaintiff's claims relate to his role as a sales agent for Cingular, a provider of wireless communications services.

The following relevant facts, drawn from the complaint, are taken as true for purposes of this motion. Gustavo Calderon owns and operates Airborne Beepers & Video, Inc. ("Airborne"). On

December 1, 1997, Airborne entered into an "Authorized Dealer Agreement" (the "1997 Agreement"), and certain amendments to the 1997 Agreement, with Southwestern Bell Mobile Systems, Inc. d/b/a Cellular One-Chicago. (The complaint characterizes the defendant, Cingular, as being "formerly known as" Southwestern Bell Mobile Systems, Inc. d/b/a Cellular One-Chicago. In the memorandum in support of its motion, defendant explains that Cingular is the successor-in-interest to Southwestern Bell Mobile Systems, Inc. d/b/a Cellular One-Chicago.)[1] The 1997 Agreement provided that Airborne would be a non-exclusive, authorized agent "to solicit and contract, on behalf of CELLULAR ONE, with Subscribers" for wireless cellular service, paging, and landline long distance service.[2] Pursuant to the 1997 Agreement, defendant would pay plaintiff commissions based on total activations per month.[3]

---

[1] For convenience, we will simply refer to "defendant" or "Cingular." We also note that it is puzzling that plaintiff uses the term "defendants." Plaintiff states in its response to the motion that "[p]laintiff is unclear as to whether there is one, or more Defendants." (Response at 1 n.1.) Regardless of how one characterizes the relationship of Cingular to Cellular One-Chicago (as "successor-in-interest" or "formerly known as"), there appears to be only one proper defendant according to the allegations of the complaint.

Defendant points out that plaintiff filed both a "response" to the motion and a "memorandum of law in support of plaintiff's response." We have reviewed and considered both documents, but plaintiff's counsel is advised that only one responsive brief should be submitted in opposition to a motion to dismiss, and it is limited to 15 pages by Local Rule 7.1.

[2] On December 29, 1997, the parties executed an addendum to the 1997 Agreement, pursuant to which plaintiff was also authorized to offer debit card services to defendant's subscribers.

[3] Pursuant to the Authorized Dealer Agreement dated September 9, 1999 (the "1999 Agreement"), which is attached to defendant's motion, an "activation" consists of "[t]he act of initiating an Authorized Service in or to a Subscriber's [equipment, such as a cellular phone] by CELLULAR ONE." (Defendant's Memorandum, Ex. A, § 1.)

Plaintiff did not attach a copy of either the 1997 or the 1999 Agreement

The 1997 Agreement was scheduled to terminate on December 31, 2000. On September 9, 1999, the parties executed a new Authorized Dealer Agreement (the "1999 Agreement"), which contained substantially all the same terms and conditions as the 1997 Agreement. The 1999 Agreement had a termination date of December 31, 2002. For convenience, we will refer to the 1997 and 1999 Agreements collectively as the "Agreement."

On January 1, 2002, defendant stopped paying plaintiff commissions on activations for the preceding month and continued to fail to pay plaintiff commissions and residuals. (Residuals, according to plaintiff, are similar to royalty payments, calculated on the basis of the monthly bill paid by a customer.) Defendant has also failed to promptly pay commissions for sales of insurance coverage offered by plaintiff as defendant's agent, and when paid, those commissions are not supported by documentation of their calculation. Furthermore, when customers who signed up for service through plaintiff have failed to pay their bills and have thus been disconnected, defendant has "charged back" the respective commissions to plaintiff. Defendant sometimes directly contracts

---

to the complaint. However, documents that defendants attach to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to its claim. See Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431-32 (7th Cir. 1993). Plaintiff refers to both Agreements in the complaint, and they are central to its claims. Therefore, we can consider the 1999 Agreement without converting defendant's motion into a motion for summary judgment.

with the same customers again, but fails to reinstate the
commission and residuals.

Included in the complaint is a host of additional allegations
of wrongdoing by defendant:

- "Unfairly and discriminately" providing inventory of telephones to other agents before providing telephones to plaintiff.
- Providing poor-quality telephones to plaintiff, causing customers to become frustrated and cancel service.
- Making customers who sign up for service through plaintiff wait several months if they need phone repair, while giving customers of other agents better-quality phones and faster repair.
- Not giving plaintiff a free phone, but giving them to other agents.
- Arbitrarily changing the method of paying commissions to cash on delivery.
- Approving plaintiff as an agent at a prospective location while simultaneously approving another agent for the same location.
- Requiring plaintiff to submit supporting paperwork in order to receive commissions and residuals.
- Improperly billing customers who signed up through plaintiff and being slow to respond to their concerns.
- Failing to "give credit" to plaintiff for customers who sign new service contracts after their contract expires.
- Allowing "non-authorized retail outlets" to directly compete with plaintiff.
- Rejecting some customer agreements submitted by plaintiff based on technicalities, such as typographical errors.
- Certain of defendant's executives telling other agents that plaintiff was a "trouble-maker," "causing Plaintiff's life to be threatened."
- "Certain executives of Defendants directly threaten[ing] Plaintiff with the loss of his property rights under the Dealer Agreement, because Plaintiff exercised his right to petition Defendants to enforce the Dealer Agreement with the other agents in the same manner as it was enforced with him, and to act in good faith."

- Permitting other agents to operate locations very close to that of plaintiff, and permitting those agents to sell competitors' products and services, thus "cannibalizing" plaintiff's business.
- Denying almost all of plaintiff's requests to open locations in "economically advantaged" areas.
- Failing to designate plaintiff as a "Sales and Service Center."
- Unilaterally modifying the terms of a customer "pre-paid" program.
- Failing to list plaintiff's location in advertising.

(Complaint, ¶¶ 14-59.)

According to plaintiff, this "abuse" by defendant "is re-experienced daily and results in recurrent and intrusive recollections through dreams, nightmares, and disassociative states." (Id., ¶ 60.) Plaintiff "has difficulty in falling and staying asleep," and "has suffered a loss of pleasure in previously enjoyed activities, has uncontrollable trembling, vomiting, and abdominal distress, panic attacks, and has difficulty in concentrating and completing even the simplest tasks." "There is a direct causal connection between Plaintiff's current emotional conditions and the conduct of Defendants toward Plaintiff." (Id, ¶¶ 61-64.) Furthermore, plaintiff states that he believes defendant's actions are "motivated by [p]laintiff's race" (Calderon is Hispanic), and alleges that defendant is "forcing" him out of business along with other minority dealers. (Id., ¶¶ 65-67.)

Plaintiff filed this action on December 17, 2002. The complaint alleges the following claims: breach of contract (Count I); "deceptive and fraudulent practices" (Count III); breach of

fiduciary duty (Count IV); unfair competition (Count V); tortious interference with business relationships (Count VI); unjust enrichment (Count VII); violation of the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1961 et seq. (Count VIII); "illegal retaliation" (Count IX); "unlawful discrimination" (Count X); and intentional infliction of emotional distress (Count XI). Additionally, in Count II, plaintiff seeks an accounting.

Cingular now moves to dismiss plaintiff's claims.

## DISCUSSION

### A. Proper Plaintiff

Defendant argues that the identity of the plaintiff is unclear from the complaint. The caption of the complaint refers to "Gustavo R. Calderon, an individual, d/b/a Airborne Beepers & Video, Inc., an Illinois corporation, Plaintiff." Paragraph 1 of the section entitled "The Parties" states that "[p]laintiff is an individual." However, paragraph 1 of the section titled "Jurisdiction and Venue" states that "[p]laintiff at all relevant times herein maintained its principal place of business in Cook County, Illinois, and regularly conducts business in the City of Chicago, County of Cook, State of Illinois," and does not set forth Calderon's own citizenship. The complaint refers to "plaintiff" in the singular, not in the plural. So who is the plaintiff--Calderon or Airborne, or both? The breach of contract claim would have to

be brought by Airborne because Airborne was a party to the
Agreement, not Calderon.[4]   The complaint contains an emotional
distress claim, which could not be brought by a corporation.

We will assume for purposes of the instant motion that both
Calderon and Airborne are plaintiffs, but we will refer to
"plaintiff" in the singular as the parties do, for convenience.  As
discussed infra, the complaint is deficient in many respects and
will be dismissed in its entirety with leave to replead certain
claims.  Therefore, if plaintiff chooses to file an amended
complaint, it must specify whether the plaintiff is Calderon, the
individual; Airborne, the corporation; or both.   If both Calderon
and Airborne are asserting claims, then the amended complaint
should specify which plaintiff is asserting which claim.

## B.   Count I (Breach of Contract)

Defendant argues that Count I fails to meet the requirements
of Federal Rule of Civil Procedure 8.   Pursuant to Rule 8(a)(2), a
complaint must set forth "a short and plain statement of the claim
showing that the pleader is entitled to relief."    Rule 8(e)(1)
requires each averment of a pleading to be "simple, concise, and
direct."    Taken together, these two requirements "underscore the
emphasis placed on clarity and brevity by the federal pleading
rules."  5 Charles Alan Wright & Arthur R. Miller, Federal Practice

---

[4] Even though Calderon signed the Agreement, the Agreement indicates that
he did so as President of Airborne.

and Procedure § 1217 (2d ed. 1990). The primary purpose of these provisions is rooted in fair notice; a "complaint must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is." Wade v. Hopper, 993 F.2d 1246, 1249 (7th Cir. 1993) (citation omitted).

Defendant contends that Count I fails to set forth specific contractual rights and breaches and thus fails to put defendant on notice of the bases for the claim. Count I does adequately identify certain alleged breaches of contract--(1) the failure to pay commissions and residuals; (2) the failure to extend credit and provide inventory to plaintiff; and (3) the failure to provide regular reports and financial statements.

However, Count I is extremely vague in other respects. Plaintiff states that "Defendants breached their agreements and representations in that they did not fulfill the expressed and reasonably implied obligations under the contract." (Complaint, ¶ 72.) Plaintiff also alleges that defendant breached the Agreement by "engaging in deceitful and fraudulent practices," "violating [its] fiduciary duty to Plaintiff," "engaging in unfair competition with Plaintiff," "interfering with Plaintiff's customer contracts," and "unjustly enriching themselves." (Id., ¶ 75.) These statements fail to put defendant on notice of exactly how it allegedly breached the Agreement and therefore do not satisfy Rule

8. As described supra, the complaint contains a laundry list of claimed wrongdoing by the defendant, but it fails to specify which acts were breaches of contract and which acts are the basis for plaintiff's other claims. Defendants are entitled to know which actions plaintiff alleges were breaches of contract. Accordingly, Count I is dismissed without prejudice. Plaintiff is given leave to amend the complaint to specify exactly which alleged actions (in addition to the three actions described supra) form the basis for the breach of contract claim.

## C.   Count II (Accounting)

To state a claim for an accounting under Illinois law, "plaintiff must allege the absence of an adequate remedy at law and either a breach of a fiduciary relationship, a need for discovery, fraud, or the existence of mutual accounts which are of a complex nature." 3Com Corp. v. Electronic Recovery Specialists, Inc., 104 F. Supp. 2d 932, 941 (N.D. Ill. 2000) (citing Mann v. Kemper Fin. Cos., 618 N.E.2d 317, 327 (Ill. App. Ct. 1992)). Defendant contends that plaintiff has not alleged the absence of an adequate remedy at law, but has alleged breach of contract (which provides a legal remedy).

Indeed, plaintiff has failed to allege that it is without an adequate remedy at law. In its response, plaintiff argues that we should not dismiss the claim because it needs to determine how much defendant has "underpaid" commissions and residuals. All of the

accounting information, however, will be provided through discovery on the breach of contract claim. The claim for an accounting is superfluous. See <u>Midwest Neoped Assocs., Ltd. v. Allmed Fin. Corp.</u>, No. 98 C 6973, 1999 WL 674747, at *2 (N.D. Ill. Aug. 23, 1999) (dismissing accounting claim where "superfluous" and accounting information would be revealed in discovery on contract claim). Therefore, Count II will be dismissed with prejudice.

### D.    **Count III (Deceptive and Fraudulent Practices)**

Count III appears to be a fraudulent inducement claim. Plaintiff alleges that defendant made false representations "in an effort to induce Plaintiff to execute the Dealer Agreement and promote the products and services" of defendant. According to plaintiff, he would not have entered into the Agreement and become defendant's agent were it not for the misrepresentations. (Complaint, ¶¶ 84, 86, 91, 93, 94.)

Defendant argues that Count III fails to meet Rule 9(b)'s pleading requirements for a fraud claim. "To meet the particularity requirements of Rule 9(b), a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." <u>Sears v. Likens</u>, 912 F.2d 889, 893 (7th Cir. 1990) (citation omitted); <u>see also</u> <u>Ackerman v. Northwestern Mut. Life Ins. Co.</u>, 172

F.3d 467, 469 (7th Cir. 1999) (stating that the plaintiff must plead the who, what, when, where, and how of the alleged fraud).

Plaintiff responds that Count III "is not styled as a fraud claim, and this count is not a fraud claim within the meaning of FRCP 9(b). It combines promissory fraud and negligent misrepresentation, and is styled to reflect the hybrid nature of the count." (Memorandum in Support of Response at 6.) Promissory fraud and negligent misrepresentation are two distinct claims that must be pled in separate counts. In any event, Count III fails to state either type of claim.

A promissory fraud claim must comply with Rule 9(b)'s particularity requirements. See Zic v. Italian Gov't Travel Office, 130 F. Supp. 2d 991, 995 (N.D. Ill. 2001) (promissory fraud must be pleaded with particularity). Count III does not set forth the who, what, when, where, and how of the alleged promissory fraud.[5] Moreover, promises of future conduct are not actionable under Illinois law unless they are "particularly egregious" or "embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." See Properties Unlimited, Inc. Realtors v.

---

[5] Plaintiff argues that he should be excused from the requirements of Rule 9(b) because he "has suffered extreme psychological damage and partial memory loss, making him presently unable to recite each and every instance of the identity of each person who made a misrepresentation to Plaintiff, and the exact time and place." (Memorandum in Support of Response at 6.) We view this purported memory loss with some skepticism (especially considering that it is not alleged in the complaint), but in any event, plaintiff fails to cite any authority for a "memory loss" exception to Rule 9(b).

Cendant Mobility Servs., No. 01 C 8375, 2002 WL 1147460, at *2
(N.D. Ill. May 28, 2002) (quoting Desnick v. American Broad. Cos.,
44 F.3d 1345, 1354 (7th Cir. 1995)). Plaintiff has not alleged
these types of promises or a larger pattern of deception.

Plaintiff also fails to state a claim for negligent
misrepresentation. A necessary element of a negligent
misrepresentation claim under Illinois law is that the defendant
must be "in the business of supplying information for the guidance
of others in their business dealings." Tolan & Son, Inc. v. KLLM
Architects, Inc., 719 N.E.2d 288, 296 (Ill. App. Ct. 1999). Where
a defendant supplies information that is merely ancillary to a
service or the sale of a product, it is not considered to be in the
business of supplying information for the guidance of others in
their business dealings. See id. Plaintiff has not alleged that
defendant is in the business of supplying information for the
guidance of others in their business dealings, and the
circumstances presented in the complaint--where plaintiff was
acting as defendant's agent in soliciting customers for wireless
communications services--are inconsistent with such a theory.

Count III is dismissed without prejudice. Plaintiff is given
leave to file an amended complaint adequately alleging a promissory
fraud claim (but not a negligent misrepresentation claim).

**E.   Count IV (Breach of Fiduciary Duty)**

Defendant argues that plaintiff fails to state a claim for breach of fiduciary duty for two reasons: (1) where a contract exists between parties establishing a principal-agent relationship, any fiduciary obligations are limited to the activities defined by the contract; and (2) the claim is duplicative of the breach of contract claim.  The authority that defendant cites for the first proposition, State Security Insurance Co. v. Frank B. Hall & Co., 630 N.E.2d 940, 946 (Ill. App. Ct. 1994), is inapposite and does not support defendant's argument.  However, we agree with defendant that the claim is duplicative of plaintiff's contract claim because it relies only on the alleged failure to pay commissions and residuals, which is one of the subjects of the contract claim. Count IV is not pled in the alternative and does not allege anything that has not already been alleged in Count I.  Therefore, Count IV is dismissed without prejudice.

**F.   Count V (Unfair Competition)**

Count V appears to be a common-law unfair competition claim. It alleges that defendant unfairly competed with plaintiff by "supplanting [itself] in business relationships established by plaintiff," allowing unauthorized dealers to operate close to plaintiff, and "providing bad service, faulty equipment, incorrect bills, and . . . not providing product" to plaintiff.  (Complaint,

¶¶ 105-106.)  Defendant asserts that none of these alleged facts can be a basis for an unfair competition claim.

"While the [Illinois Uniform Deceptive Trade Practices Act] has codified the law of unfair competition generally, certain causes of action for unfair competition may still be found outside the statute."  Logan Graphic Prods., Inc. v. Textus USA, Inc., No. 02 C 1823, 2002 WL 31507174, at *7 (N.D. Ill. Nov. 8, 2002).  To the extent that non-statutory claims for unfair competition exist, they are either in the nature of tortious interference or "misappropriation" claims.  See id.  Plaintiff attempts to allege a tortious interference with business relationships claim in Count VI, based on the defendant purportedly "supplanting" itself in plaintiff's business relationships; thus, to the extent that this conduct forms the basis for Count V, it is duplicative of Count VI.

Plaintiff also alleges that defendant allowed dealers to open locations close to that of plaintiff and provided defendant with inadequate inventory of equipment.  These allegations do not fit within either the misappropriation or the tortious interference framework; rather, they are covered by the contract.  The former allegation could be the basis for a breach of contract claim if the contract prohibited this conduct, but the 1999 Agreement specifically states: "CELLULAR ONE reserves the right without obligation or liability to AGENT to market the Authorized Services and [equipment] in the same geographical areas served by AGENT,

whether through CELLULAR ONE's own representatives or through others including, but not limited to other authorized agents, retailers, resellers and distributors." (Defendant's Memorandum, Ex. A, § 3.) The allegations that defendant provided bad service, incorrect bills, and faulty equipment to subscribers likewise do not fall within the misappropriation or tortious interference framework. Count V is therefore dismissed with prejudice.

## G. Count VI (Tortious Interference with Business Relationships)

Count VI alleges that defendant wrongfully interfered with the relationships that plaintiff established with subscribers by inducing those subscribers to breach their original contracts and then to re-activate the contract directly with defendant, in order to deny plaintiff his commissions. Defendant contends that the contracts and relationships at issue were between subscribers and the defendant, not plaintiff, because plaintiff was merely acting as defendant's agent. Plaintiff concedes that this "may be ultimately true," but contends that "there is a cost that Defendants are to pay to Plaintiff for developing that 'contractual relationship' Defendants ultimately enjoy." (Memorandum in Support of Response at 11.) This argument illustrates that Count VI is simply the same breach of contract claim for failure to pay commissions that is asserted in Count I, dressed up as a tortious interference claim. Accordingly, Count VI is dismissed with prejudice.

**H.   Count VII (Unjust Enrichment)**

Defendant argues that plaintiff's unjust enrichment claim must be dismissed because plaintiff also asserts a breach of contract claim.   "To state a cause of action based upon a theory of unjust enrichment, a plaintiff must allege that the defendant unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience.   Because the theory is based upon an implied contract, it has no application when an express contract governs the relationship between the parties."   B & B Land Acquisition, Inc. v. Mandell, 714 N.E.2d 58, 63 (Ill. App. Ct. 1999) (citation omitted).

Here, plaintiff has alleged in Count I that an express contract existed and that defendant breached it.   Count VII is not pled in the alternative to Count I.   Accordingly, it is dismissed without prejudice.

**I.   Count VIII (RICO)**

Count VIII of the complaint is a civil RICO claim.   Plaintiff fails to specify which subsection(s) of 18 U.S.C. § 1962 it is alleging that defendant violated.   It alleges that defendant "engaged in a pattern of racketeering activity" that "included multiple acts of mail fraud, threats and intimidation." (Complaint, ¶¶ 130-131.)   The complaint does not provide any more specifics about these purported predicate acts.

These sweeping and vague allegations are insufficient to state a RICO claim. Moreover, plaintiff fails to plead the alleged mail fraud with specificity. Civil RICO claims are subject to the heightened pleading standard of Rule 9(b). See Slaney v. International Amateur Athletic Fed'n, 244 F.3d 580, 597 (7th Cir. 2001). In so many words, plaintiff concedes in the response that Count XIII is insufficient and requests leave to amend this count. Count XIII is therefore dismissed without prejudice, and plaintiff will be given leave to amend if it wishes. The amended claim should specify which subsection of 18 U.S.C. § 1962 plaintiff alleges was violated. In addition, plaintiff should avoid generalities and provide sufficient detail for defendant to understand the claim against it by stating the specific factual bases and identifying the alleged pattern of racketeering activity.

## J. **Count IX (Illegal Retaliation)**

Count IX is labeled an "illegal retaliation" claim. It appears to be the same breach of contract claim for failure to pay commissions that plaintiff asserts over and over again in different counts of the complaint. More importantly, plaintiff fails to state any legal basis for this claim, either statutory or common-law. The phrase "illegal retaliation" is normally used in Title VII cases, but this is not an employment discrimination case. Count IX is dismissed with prejudice.

**K.   Count X (Unlawful Discrimination)**

In Count X, plaintiff alleges that defendant's conduct toward him was motivated by "the fact that Plaintiff is a Mexican-American." (Complaint, ¶ 152.) According to plaintiff, defendant treats agents who are "not Hispanic" differently from those who are. As with Count IX, plaintiff fails to state any legal basis for this claim. The only legal basis that we can conceive would be 42 U.S.C. § 1981, which provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

To state a claim under § 1981, a plaintiff must allege that: (1) plaintiff is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making, performance, modification, and termination of a contract). See Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996). Plaintiff satisfies the first two elements, but fails to allege that there was any discrimination that concerned an alleged contractual obligation. Count X includes

a litany of purported wrongdoing by defendant, but fails to allege that any of it related to any of defendant's <u>contractual</u> obligations to plaintiff. Therefore, Count X is dismissed without prejudice. If plaintiff wishes to replead Count X, counsel is reminded that, like Count XI, discussed <u>infra</u>, this is a claim that could only be brought by an individual, not a corporation.

## L.  **Count XI (Intentional Infliction of Emotional Distress)**

As noted <u>supra</u>, although the complaint is unclear as to whether both Calderon and Airborne are plaintiffs, we will construe this count in the only way that makes sense--as being brought by Calderon, an individual. Count XI alleges that defendant "seduc[ed] Plaintiff into expectations of profits and economic well being, using the paradigm of an agency relationship that would reward Plaintiff for his individual efforts in signing-up customers for Defendants." (Complaint, ¶ 179.) Plaintiff does not specify which of the dozens of purportedly wrongful actions caused his distress, but claims that defendant has "reduced him to something less than a human and fully enfranchised American citizen" and caused post-traumatic stress disorder. (Complaint, ¶¶ 177, 180.)

Defendant argues that we must dismiss this claim because plaintiff has failed to allege conduct that is extreme and outrageous. The elements of an intentional infliction of emotional distress claim under Illinois law are: (1) the defendant's conduct was extreme and outrageous, (2) the defendant either intended for

his conduct to inflict severe emotional distress or knew that there was a high probability that his conduct would do so, and (3) the defendant's conduct in fact caused severe emotional distress. <u>See</u> <u>Rekosh v. Parks</u>, 735 N.E.2d 765, 772 (Ill. App. Ct. 2000).

Count XI is yet another claim that fails to put defendant on notice of its factual basis. In order to determine if the conduct that allegedly caused plaintiff's emotional distress was sufficiently extreme and outrageous to state a claim, we have to know what the conduct was. Given that plaintiff has alleged dozens and dozens of purportedly wrongful acts by defendant, the reference in Count XI to "the foregoing hardships caused by" defendant is insufficient.

Count XI is dismissed without prejudice. If plaintiff wishes to replead this claim, he must specify which of defendant's actions caused the alleged emotional distress.

## CONCLUSION

For the foregoing reasons, defendant's motion is granted, and the complaint is dismissed. Counts I, III, IV, VII, VIII, X, and XI are dismissed without prejudice, and Counts II, V, VI, and IX are dismissed with prejudice. Plaintiff may file an amended complaint by November 5, 2003, and is advised that any amended complaint must comply with the pleading requirements outlined in this opinion.

DATE:          October 8, 2003

ENTER:

John F. Grady, United States District Judge