## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9134 | **DATE** | December 13, 2004 |
| **CASE TITLE** | Calderon, et al. v Southwestern Bell Mobile Systems | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant SBC's motion to dismiss 32-1 is granted, and the amended complaint is dismissed with prejudice as to SBC Communications Inc. Defendant Cingular Wireless's motion to dismiss 38-1 is granted in part and denied in part. Counts I, II, III, IV, and VI are dismissed without prejudice, and Count V is dismissed with prejudice. Plaintiffs may file a second amended complaint by January 10, 2005, and are again advised that any amendment must comply with the pleading requirements outlined in this opinion. ENTER MEMORANDUM OPINION.

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| X | Notices MAILED by judge's staff. | | DEC 1 5 2004 | 46 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to _____ | | date mailed notice | |
| KAM | courtroom deputy's initials | | KAM | mailing deputy initials |

Date/time received in central Clerk's Office
(Reserved for use by the Court)

December 13, 2004

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DOCKETED

DEC 1 5 2004

| | |
|---|---|
| GUSTAVO R. CALDERON, individually, and AIRBORNE BEEPERS & VIDEO, INC., an Illinois corporation, <br><br> Plaintiffs, <br><br> v. <br><br> SOUTHWESTERN BELL MOBILE SYSTEMS, LLC, d/b/a CINGULAR WIRELESS, and SBC COMMUNICATIONS INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 02 C 9134 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

Before the court are defendants' motions to dismiss the amended complaint. For the following reasons, the motion of SBC Communications Inc. is granted, and the motion of Cingular Wireless is granted in part and denied in part.

## BACKGROUND

Plaintiff Gustavo R. Calderon is the president and majority shareholder of plaintiff Airborne Beepers & Video, Inc. ("Airborne"). Plaintiffs bring this suit against defendants Cingular Wireless ("Cingular") and SBC Communications Inc. ("SBC").[1] Plaintiffs' claims relate to Airborne's role as an authorized dealer for Cingular, a provider of wireless

---

[1] Plaintiffs' oral motion to voluntarily dismiss defendant Bell South Corporation was granted on May 5, 2004.

46

communications services. Defendant SBC is Cingular's parent company.

The instant motions concern plaintiffs' amended complaint. We previously dismissed all of the claims alleged in the original complaint, some with prejudice and some without, and gave plaintiffs leave to file an amended complaint. Our prior memorandum opinion contains a detailed description of plaintiffs' factual allegations, which will not be repeated here. The following summary will suffice for the present.

In 1997, Airborne entered into an "Authorized Dealer Agreement" (the "1997 Agreement") with Cingular's predecessor, whom we will refer to as Cingular. The 1997 Agreement provided that Airborne would be a non-exclusive, authorized agent "to solicit and contract" on behalf of Cingular with subscribers for wireless cellular service, paging, and landline long distance service. Pursuant to the 1997 Agreement, Airborne would be paid commissions based on total activations per month.[2] When the 1997 Agreement was scheduled to terminate, the parties executed a new Authorized Dealer Agreement (the "1999 Agreement"), which contained substantially all the same terms and conditions as the 1997

_____

[2] Pursuant to the Authorized Dealer Agreement dated September 9, 1999 (the "1999 Agreement"), which is attached to Cingular's motion, an "activation" consists of "[t]he act of initiating an Authorized Service in or to a Subscriber's [equipment, such as a cellular phone]." (Cingular's Memorandum, Ex. B, § 1.)

Agreement. For convenience, we will refer to the 1997 and 1999 Agreements collectively as the "Agreement."

According to plaintiffs, in early 2002, Cingular stopped paying commissions on activations for the preceding month and continued to fail to pay Airborne commissions and residuals. (Residuals, according to plaintiffs, are similar to royalty payments, calculated on the basis of the monthly bill paid by a customer.) Cingular also failed to promptly pay commissions for sales of insurance coverage offered by Airborne as Cingular's agent. Furthermore, when customers who signed up for service through Airborne have failed to pay their bills and have thus been disconnected, Cingular has "charged back" the respective commissions to Airborne. Cingular sometimes directly contracts with the same customers again, but fails to reinstate the commission and residuals.

Plaintiffs also complain about other aspects of their relationship with Cingular and assert that Cingular's alleged actions stem from a "widespread pattern and practice of discrimination against blacks and minorities."[3] (Verified Amended Complaint, ¶ 2.) According to plaintiffs, Cingular fails to uphold its contractual obligations to minority dealers; refuses to enter into "sales and service" contracts with minority dealers; and

---

[3]    Calderon is Hispanic and alleges that he is a Mexican national. (Verified Amended Complaint, ¶ 23.)

refuses to rent or sell certain cellular telephones to minority dealers.

The amended complaint alleges the following claims: violation of 42 U.S.C. § 1981 (Count I); violation of 42 U.S.C. § 1982 (Count II); common-law fraud (Count III); breach of contract (Count IV); breach of the covenant of good faith and fair dealing (Count V); and violation of the Illinois Franchise Disclosure Act, 815 ILCS 705/1 et seq. (Count VI).

The original complaint was problematic because, among other things, it was unclear as to who was the plaintiff--Calderon or Airborne, or both. The amended complaint specifies that both Calderon and Airborne are plaintiffs.

The original complaint also failed to specify which plaintiff was asserting what claim. The amended complaint is improved, but still employs the confusing plural term "plaintiffs" in each count. Nonetheless, paragraph 1 of the amended complaint and plaintiffs' response brief both state that Calderon asserts the federal claims in Counts I and II, and that both Calderon and Airborne assert the state-law claims in Counts III-VI. We also conclude that Calderon was the agent of Airborne.

Defendants now move to dismiss the amended complaint.

## DISCUSSION

### A. SBC's Motion to Dismiss

SBC contends that all claims should be dismissed as against SBC because the amended complaint alleges no conduct by SBC for which it could be liable to plaintiffs but merely alleges that SBC is the parent company of Cingular.

There were only two parties to the Agreement: plaintiff Airborne and defendant Cingular (actually, Cingular's predecessor).[4] SBC was not a party to the Agreement. Plaintiffs do not allege that SBC engaged in any conduct other than simply being the parent company of Cingular, nor do they allege any facts suggesting that SBC could be liable for Cingular's acts (through, for example, a veil-piercing or alter-ego theory). This is insufficient to state any claims against SBC. "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." United States v. Bestfoods, 524 U.S. 51, 61 (1998). Accordingly, defendant SBC will be dismissed with prejudice.

---

[4] As noted in our earlier memorandum opinion, although plaintiffs did not attach a copy of the Agreement to the amended complaint, we can consider that document without converting defendants' motions into motions for summary judgment because the Agreement is referred to in the amended complaint and is central to plaintiffs' claims. See Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431-32 (7th Cir. 1993).

**B.** **Cingular's Motion to Dismiss**

    **1.**   **Counts I and II (42 U.S.C. §§ 1981 and 1982)**

42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

42 U.S.C. § 1982 states: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Because they have a common origin and purpose, §§ 1981 and 1982 are usually construed together. See Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996).

Cingular contends that Counts I and II fail to state claims pursuant to Federal Rule of Civil Procedure 12 and fail to meet the requirements of Federal Rule of Civil Procedure 8 because they do not put Cingular on notice of the bases for the claims.

Calderon alleges that he is member of a racial minority and that Cingular intended to discriminate against him on the basis of his race. In Count I, he also alleges generally that the

discrimination "related to the making, performing and modifying a contract, as set forth above and in the common law fraud cause of action below." (Verified Amended Complaint, ¶ 21.) It does appear that many of Cingular's alleged wrongful actions did indeed relate to the making or performance of a contract. However, the language "as set forth above and in the common law fraud cause of action below" is much too vague to adequately put Cingular on notice of exactly which actions, according to Calderon, constituted discrimination. Therefore, Count I will be dismissed without prejudice. Calderon is given leave to amend the complaint to specify exactly, <u>within the relevant count</u>, which actions form the basis for his § 1981 discrimination claim.

Calderon's § 1982 claim alleges that Cingular discriminated against him by refusing to rent or sell certain cellular telephones to him. If Count II stopped there, it would adequately state a claim. However, ¶ 25, which is part of Count II, states that "[t]he discrimination enumerated above concerns the selling and renting of certain cellular phones under the 'sale and services' contract, as set forth above and in the common law fraud cause of action below." The phrase "as set forth above and in the common law fraud cause of action below" sentence muddies the waters; it is unclear whether Calderon is alleging additional conduct as a basis of this claim. In addition, it does not appear that Calderon is

alleging that there was a sales and service contract, but rather that Cingular refused to enter into such a contract.

Count II will be dismissed without prejudice, and Calderon is given leave to amend the complaint to specify exactly which conduct forms the basis for the § 1982 claim. For both the § 1981 and § 1982 claims, plaintiff must describe the relevant alleged acts of discrimination so that the court can discern whether acts were directed against Calderon individually, as opposed to Airborne, the corporation of which he is the majority shareholder.[5] Counsel is advised that if the revised pleading persists in such vague generalities and imprecise references to other sections of the complaint, Counts I and II will be dismissed with prejudice.

## 2. Count III (Common-Law Fraud)

To state a claim for fraud, plaintiffs must allege a false statement of material fact; known or believed to be false by the person making it; the speaker's intent that the listener rely on the misstatement; reliance on the alleged misstatement; and damage resulting from the reliance. See W.W. Vincent & Co. v. First Colony Life Ins. Co., 814 N.E.2d 960, 969 (Ill. App. Ct. 2004).

---

[5] The parties have not discussed, and we have not found very much case law pertaining to, the issue of whether an individual has the right to complain about discrimination directed at his corporate employer. A further question would be whether a corporate entity has standing to assert a discrimination claim. If it does not (which appears to be the general rule), then there is a question regarding whether a corporate employee could assert such a claim on the basis that he suffered detriment as a result of discriminatory acts committed against his employer.

An introductory paragraph to Count III states that "[t]here are seven incidents that constitute common law fraud and/or a breach of contract." (Verified Amended Complaint, ¶ 28.) However, there are only six enumerated "incidents." Moreover, although paragraph 1 of the complaint states that the state-law claims are brought by both plaintiffs, Count III switches between use of the singular "plaintiff" and the plural "plaintiffs" and is confusingly unspecific about which plaintiff relied on which statement in what manner and to what detriment. If a statement was made to Calderon, then plaintiffs should so allege; it does not make sense to allege that a statement was made to "plaintiffs" given that one of the plaintiffs is a corporation.

It is also noteworthy that plaintiffs appear to be attempting at least in part to state a fraudulent inducement claim in Count III, but they are very imprecise about when certain statements were made in relation to what specific contracts were fraudulently induced, and when those contracts were entered into. With respect to some of the alleged statements, plaintiffs wholly fail to allege when they were made. With respect to others, simply specifying a year such as 1999 does not suffice because plaintiffs must allege that the statement was made prior to entering into the relevant contract that they claim was fraudulently induced. In addition to failing to allege when the statements were made, plaintiffs fail to allege where they were made. In some of alleged instances of fraud

(for example, the sixth incident), it is not clear why or how the statement was fraudulent. Plaintiffs also fail to allege that there was damage resulting from reliance on purported statements.

Moreover, plaintiffs imply in their response that they cannot truly allege that the Cingular representatives who made the allegedly false statements knew that those statements were false when making them. Plaintiffs assert that whether the statements were known to be false "is something that can be confirmed in discovery," and "if it is not shown that the individual who made the false statement knew it to be false at the time he made it, then the claim is only a breach of contract claim." (Response at 7.) As with most of plaintiffs' arguments, their position is somewhat unclear. We will say, however, that it appears that plaintiffs themselves have raised the question of whether there is a factual basis for the fraud claim.

Accordingly, Count III will be dismissed without prejudice. Plaintiffs will be given leave to replead Count III. We remind plaintiffs again that "[t]o meet the particularity requirements of Rule 9(b), a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." <u>Sears v. Likens</u>, 912 F.2d 889, 893 (7th Cir. 1990) (citation omitted); <u>see also</u> <u>Katz v. Household Int'l, Inc.</u>, 91 F.3d 1036, 1040 (7th Cir. 1996) (stating that the

plaintiff must plead the who, what, when, where, and how of the alleged fraud). We also repeat that promises of future conduct are not actionable under Illinois law unless they are "particularly egregious" or "embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." See Properties Unlimited, Inc. Realtors v. Cendant Mobility Servs., No. 01 C 8375, 2002 WL 1147460, at *2 (N.D. Ill. May 28, 2002) (quoting Desnick v. American Broad. Cos., 44 F.3d 1345, 1354 (7th Cir. 1995)). Again, plaintiffs have not alleged these types of promises or a larger pattern of deception.

### 3. __Count IV (Breach of Contract)__

In Count IV, plaintiffs allege the following:

40. Plaintiffs repeat paragraph [sic] 1 through 39 as stated herein.
41. In 1997, Plaintiffs entered into a contract with the defendants entitled *Authorizes* [sic] *Dealer Agreement*, whereby the [sic] Cingular provided cellular phones and Plaintiffs sold the phones and receive [sic] profit and commissions.
42. Since April 2003, Defendants continued to breach of [sic] *Authorized Dealer Agreement* by: failing to pay commissions and residuals to Plaintiffs, failing to extend credit and provide inventory to Plaintiffs, and failing to provide regular reports and financial statements.
43. The Plaintiffs and Defendants entered into a contractual agreement with respect to the statements made in the pleadings set forth in the above common law fraud cause of action. Defendants breached said contract by not fulfilling its [sic] contractual obligations, as set forth above.

(Verified Amended Complaint, ¶¶ 40-43.)

In paragraph 42 of Count IV, plaintiffs adequately identify certain alleged breaches of contract--(1) the failure to pay commissions and residuals; (2) the failure to extend credit and provide inventory; and (3) the failure to provide regular reports and financial statements. However, paragraph 43 is extremely vague. As with plaintiffs' federal-law claims, the last sentence of the breach of contract claim muddies the waters. It is confusing because it refers to "a contractual agreement with respect to the statements made in the pleadings set forth in the above common law fraud cause of action." Are plaintiffs alleging that each allegedly fraudulent statement also constituted breach of contract? If so, how? And are the alleged breaches those of the Agreement or of some other purported contract?

Count IV is also problematic because it is supposedly brought by both Calderon and Airborne. As we explained in our earlier opinion, Calderon cannot bring a breach of contract claim based on the Agreement because he was not a party to the Agreement (only Airborne was). If Calderon is claiming that he entered into some other, separate contract with Cingular, he should specify the contract and set forth the attendant circumstances.

Count IV will be dismissed without prejudice. Plaintiffs are given leave to amend the complaint to specify exactly which alleged actions (in addition to the three actions described supra) form the basis for the breach of contract claim; how those actions

constitute breach of contract; which purported contract or contracts were allegedly breached; and which plaintiff is bringing the claim. It goes (or should go) without saying that if Calderon was not a party to a contract, he does not have standing to sue for a breach of that contract.

### 4. Count V (Breach of the Covenant of Good Faith and Fair Dealing)

In Count V, plaintiffs purport to allege a claim for breach of the covenant of good faith and fair dealing. The duty of good faith and fair dealing is a part of every express contract under Illinois law, but it does not form the basis for an independent tort. See, e.g., Coleman v. Madison Two Assocs., 718 N.E.2d 668, 674-75 (Ill. App. Ct. 1999) ("[N]otions of fair dealing and good faith by themselves do not form the basis for tort relief."); Guardino v. Chrysler Corp., 691 N.E.2d 787, 793 (Ill. App. Ct. 1998); Anderson v. Burton Assocs., Ltd., 578 N.E.2d 199, 203 (Ill. App. Ct. 1991).

Count V will be dismissed with prejudice.

### 5. Count VI (Franchise Disclosure Act)

Count VI alleges that Cingular violated the Illinois Franchise Disclosure Act (the "Act"), 815 ILCS 705/1 et seq. The Act applies only to franchises; a franchise is defined as "a contract or agreement . . . by which: (a) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services, under a marketing plan . . . prescribed . . . by a

franchisor; and (b) the operation of the franchisee's business
pursuant to such plan . . . is substantially associated with the
franchisor's trademark . . . ; and (c) the person granted the right
to engage in such business is required to pay, directly, or
indirectly, a franchise fee of $500 or more."  815 ILCS 705/3(1).
Cingular argues that plaintiffs have failed to allege the necessary
elements of a claim under the Act.

The Agreement specifically states that Cingular and Airborne
"acknowledge and agree that their agency relationship arising from
this Agreement does not constitute or create a general agency,
joint venture, partnership, employment relationship or franchise
between them."  (Cingular's Memorandum, Ex. B, § 3 (emphasis
added).)  The amended complaint alleges that "[p]laintiffs had to
pay SBC and Cingular Wireless $1000 for the right to engage in the
business of selling Cingular's product and services.  Plaintiffs
had to pay one dollar per customer, or phone that was activated,"
but the Agreement does not contain any such requirement.  The
amended complaint does not allege that Airborne was a franchise,
nor does it allege that the $1000 payment constituted either a
direct or indirect franchise fee.  Furthermore, plaintiffs'
response to defendants' argument consists of a single conclusory
sentence stating that defendants violated the Act.  Count VI of the
amended complaint therefore will be dismissed without prejudice.
It is obvious from the foregoing discussion what plaintiffs must

add to a second amended complaint in order to state a Franchise Act claim.

## CONCLUSION

For the foregoing reasons, defendant SBC's motion to dismiss is granted, and the amended complaint is dismissed with prejudice as to SBC Communications Inc.

Defendant Cingular Wireless's motion is granted in part and denied in part. Counts I, II, III, IV, and VI are dismissed without prejudice, and Count V is dismissed with prejudice.

Plaintiffs may file a second amended complaint by January 10, 2005, and are again advised that any amendment must comply with the pleading requirements outlined in this opinion. We advise plaintiffs' counsel to employ much greater care and precision in drafting a second amended complaint. This court has already devoted an inordinate amount of time to the pleadings in this case, which in large part have been woefully deficient. If any counts of the third amended complaint are similarly deficient, plaintiffs' counsel is warned that those counts will be dismissed with prejudice and/or could be subject to possible Rule 11 ramifications.

- 16 -

DATE:          December 13, 2004

ENTER:

_____

John F. Grady, United States District Judge