# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

GUSTAVO R. CALDERON, individually,  )
and AIRBORNE BEEPERS & VIDEO,       )
INC., an Illinois corporation,      )
                                    )
        Plaintiffs,                 )
                                    )
    v.                              )   No. 02 C 9134
                                    )
SOUTHWESTERN BELL MOBILE SYSTEMS,   )
LLC, d/b/a CINGULAR WIRELESS,       )
                                    )
        Defendant.                  )

## MEMORANDUM OPINION

Before the court is defendant's motion to dismiss the Second Amended Complaint. For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Gustavo R. Calderon is the president and majority shareholder of plaintiff Airborne Beepers & Video, Inc. ("Airborne"). Plaintiffs bring this suit against defendant Southwestern Bell Mobile Systems, LLC, doing business as Cingular Wireless ("Cingular"). Plaintiffs' claims relate to Airborne's role as an authorized dealer for Cingular, a provider of wireless communications services. We have recounted many of the facts at issue in this case in prior memorandum opinions and will not repeat them here.

The instant motions concern plaintiffs' Second Amended Complaint. We previously dismissed all of the claims alleged in the original complaint, some with prejudice and some without, and gave plaintiffs leave to file an amended complaint. Plaintiffs did so, resulting in another motion to dismiss. Again, we dismissed some of the claims with prejudice and some without and gave plaintiffs leave to file a second amended complaint. Now defendants have moved for dismissal once more. We indicated to the parties that briefing would not be necessary on this go-around, and we have now reviewed the Second Amended Complaint.

The Second Amended Complaint alleges the following claims: violation of 42 U.S.C. § 1981 (Count I); violation of 42 U.S.C. § 1982 (Count II); common-law fraud (Count III); breach of contract (Count IV); breach of the covenant of good faith and fair dealing (Count V); and violation of the Illinois Franchise Disclosure Act, 815 ILCS 705/1 et seq. (Count VI).

## DISCUSSION

We must first address the state of plaintiffs' pleadings. We have repeatedly advised plaintiffs of the deficiencies in their prior complaints and have given them repeated opportunities to amend. In our previous memorandum opinions, we set forth clear and explicit instructions and warned that failure to comply with them could result in dismissal of all or certain claims with prejudice.

It appears, yet again, that plaintiffs have not followed all of our instructions.

For instance, as to the federal claims, we advised that "plaintiff must describe the relevant alleged acts of discrimination so that the court can discern whether acts were directed against Calderon individually, as opposed to Airborne . . . ." Calderon v. Southwestern Bell Mobile Sys., LLC, No. 02 C 9134, 2004 WL 2931321, at *3 (N.D. Ill. Dec. 13, 2004). We instructed plaintiffs to specify exactly which conduct formed the basis for each claim, within the relevant count. Instead, plaintiffs have included an introductory fact section within the Second Amended Complaint that contains a subsection with the following heading: "The above named Cingular's [sic] agents discriminated against Plaintiff Gustavo Calderon from 1996 to March 15, 2003, as follows." (Second Amended Complaint, ¶ 18.) Paragraph 18 lists twenty-three purported instances of discrimination. (Id. ¶ 18a-w.) Counts I and II, the federal claims, simply incorporate those paragraphs without specifying if all or some of them or which of them are the bases of the claims.

In addition, plaintiffs have, for the most part, failed to fully comply with our instructions regarding their state-law claims. We would be more than justified in dismissing the entire Second Amended Complaint, but we will attempt to salvage what we

can notwithstanding plaintiffs' failure to comply with our prior order.

**A.   Counts I and II (42 U.S.C. §§ 1981 and 1982)**

42 U.S.C. § 1981 prohibits discrimination on the basis of race in the making, performing, and modifying of contracts. 42 U.S.C. § 1982 prohibits discrimination on the basis of race in the sale or rental of property. Because they have a common origin and purpose, §§ 1981 and 1982 are usually construed together. See Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996).

Counts I and II are brought by plaintiff Calderon, who alleges that he is member of a racial minority and that Cingular intended to discriminate against him on the basis of his race. As an initial matter, we ask who is the proper plaintiff. In our first memorandum opinion, we stated that we believed that only Calderon, an individual, could bring a § 1981 claim. (Such a claim had not yet been asserted.) In our latest memorandum opinion, we noted:

> The parties have not discussed, and we have not found very much case law pertaining to, the issue of whether an individual has the right to complain about discrimination directed at his corporate employer. A further question would be whether a corporate entity has standing to assert a discrimination claim. If it does not (which appears to be the general rule), then there is a question regarding whether a corporate employee could assert such a claim on the basis that he suffered detriment as a result of discriminatory acts committed against his employer."

Calderon, 2004 WL 2931321, at *3 n.5.

In the meantime, we have become aware of the Ninth Circuit's opinion in Thicket Ink Information Resources, Inc. v. Sun Microsystems, Inc., 368 F.3d 1053 (9th Cir. 2004). The Ninth Circuit held that "[w]hen a corporation has acquired a racial identity, either as a matter of law or by imputation, then it can be the direct target of discrimination and has standing to pursue a claim under § 1981." Id. at 1059. Plaintiff Thicket Ink had assumed an "imputed racial identity" from its shareholders, who were all African-American.[1] Id.

Here, plaintiff Calderon, a Mexican national, is the "[p]resident, owner and operat[or]" of Airborne (Second Amended Complaint, ¶ 13), a closely held corporation of which Calderon is the majority stockholder. The alleged acts of discrimination by Cingular all relate to Airborne's business operations. Under Thicket Ink, Airborne acquires an imputed racial identity from Calderon and therefore has standing to pursue a federal claim, not Calderon. Thus, Airborne is the proper plaintiff for any federal claims.

As for the substance of the allegations, as stated supra, we previously instructed plaintiffs to specify in each count which conduct was the basis for which claim. The Second Amended Complaint fails to do so. The best we can do to construe Count I

---

[1] Thicket Ink had also acquired a racial identity "as a matter of law" because it was an SBA-certified minority-owned business.

as sufficiently stating a claim is to attribute the allegations of discrimination in ¶¶ 8, 16, and 18a-w to Count I.  As discussed <u>supra</u>, this claim is properly asserted by plaintiff Airborne and pertains to discrimination in both the making and performance of contracts.  Thus, we will dismiss the § 1981 claim with prejudice as to plaintiff Calderon, but without prejudice as to plaintiff Airborne, because it is properly asserted by Airborne.  Plaintiffs will be given leave to file a third amended complaint in which Airborne alone is the plaintiff asserting the § 1981 claim.  Paragraphs 8, 16, and 18a-w will be construed as the conduct that forms the basis of the § 1981 claim, and they should be incorporated into Count I itself in the third amended complaint.

The § 1982 claim that is asserted in Count II must be dismissed.  Section 1982 claims involve discrimination in the sale or rental of property.  The Second Amended Complaint vaguely alleges that Cingular "refus[ed] [Calderon] . . . to purchase, leases [sic], sell, hold, and convey real and personal property" and "did not allow him to secure leases or purchase storefronts in communities made up of mainly White citizens."  (Second Amended Complaint, ¶¶ 9-10.)  Count II alleges that Cingular "did this to prohibit plaintiff Calderon from expanding his company into a geographical areas [sic] where mainly White citizens reside."  (<u>Id.</u>, ¶ 32.) Reading the complaint as a whole, it is evident that Cingular purportedly refused to approve Calderon's requests to

operate as a Cingular dealer at other locations. It does not appear that plaintiffs are alleging that Cingular itself refused to lease or sell any property to plaintiffs. The factual allegations amount to another instance of refusal to enter into a "Sales and Service" contract with Airborne, but not a refusal to sell or lease property. Accordingly, plaintiffs do not state a § 1982 claim, and Count II will be dismissed with prejudice.

**B.     Count III (Common-Law Fraud)**

Plaintiffs appear to be asserting a fraudulent inducement claim in Count III. We have previously dismissed the prior incarnations of plaintiffs' fraud claim for failure to meet the particularity requirements of Federal Rule of Civil Procedure 9(b). The Second Amended Complaint is not an improvement. The fraud allegations are still hopelessly vague and far too imprecise. Accordingly, Count III will be dismissed with prejudice.

**C.     Count IV (Breach of Contract)**

Count IV for breach of contract is brought by plaintiff Airborne. When we previously dismissed the breach of contract claim, we gave plaintiffs leave to amend the complaint and instructed them to "specify exactly which alleged actions . . . form the basis for the breach of contract claim; how those actions constitute breach of contract; [and] which purported contract or contracts were allegedly breached . . . ." Calderon, 2004 WL 2931321, at *5.

Plaintiffs have again failed, in part, to follow our explicit directions, in particular to specify which purported contract or contracts were allegedly breached. Paragraph 6 of the Second Amended Complaint sets forth the alleged contracts and states as follows:

> There were two contracts signed in 1996, the first was known as "Access card" and the second was known as the "Collection Center Agreement." The contracts allowed plaintiff Calderon to sell prepaid services only; he was required to cancel all other contracts that he had with other cellular carriers to become an exclusive agent for Cingular. The other two contracts offered by Cingular to plaintiff Calderon were known as *Authorized Dealer Agreement* (Agreement). Plaintiff Calderon signed all contracts herein on behalf of, and as owner of, Airborne. He was required to be personal [sic] liable and a guarantor of all the contracts that he signed. In addition to these written contracts there were subsequent oral contracts made with Cingular's managers as specifically set forth herein.

(Second Amended Complaint, ¶ 6.) Paragraph 12 then alleges:

> 12. On January 17, 1996, Plaintiff Gustavo R. Calderon, entered into the first contracts offered by Cingular Known as "Access card" and later he entered into another contract called: "Collection Service Agreement." Plaintiff Calderon, as President and majority stockholder (owner) and operator, and the only decision maker, of a closely held corporation, Airborne, entered into several other contracts with Cingular.
>
> 13. On May 1, 1997, and on September 2, 1999, in the State of Illinois, Plaintiff Gustavo R. Calderon as owner and operator of Airborne entered into contracts with Cingular. The contracts were known as the "*Authorized Dealer Agreement*" (Agreement). . . .

(Id., ¶¶ 12, 13.) Another section of the complaint, paragraphs 19-24, is entitled "Breach of Contract" and sets forth purported

breaches of the Authorized Dealer Agreement. Then, in Count IV, plaintiffs muddy the waters again by stating that "[i]n 1996, and on May 2, 1997, and on September 2, 1999, in the State of Illinois, plaintiff [Calderon], who is owner and operator of Airborne, entered into a series of contracts with Cingular known as the *Authorized Dealer Agreement* (Agreement) . . . ." (Id., ¶ 47.) Various paragraphs of Count IV refer to breach of "all of the contracts," "said Agreements/contracts," "the Agreement," and "the Agreements." Which written agreements, then, are plaintiffs saying were breached by what conduct? It is still unclear.

To rescue what we can of this claim, we will construe Count IV as stating a claim for breach of only the 1997 and 1999 Authorized Dealer Agreements. Because the allegations as to other purported agreements are indecipherable and do not conform with our prior directions, the breach of contract claim is dismissed with prejudice as to any other alleged breaches of any other purported agreements, written or oral. Count IV is dismissed without prejudice as to the 1997 and 1999 Authorized Dealer Agreements. In the third amended complaint, Airborne should confine its breach of contract allegations to those Agreements only, and should specify, again, which provisions of these Agreements it claims were breached and how they were breached.

**D.   Count V (Breach of the Covenant
of Good Faith and Fair Dealing)**

We previously dismissed plaintiffs' claim for breach of the covenant of good faith and fair dealing and noted that under Illinois law, it does not form the basis for an independent tort. The dismissal was with prejudice, but plaintiffs reassert the claim in the Second Amended Complaint.  Even if plaintiffs are re-alleging the claim under a contractual theory, which does exist in Illinois, see, e.g., Puthusserill v. Shell Oil Co., No. 02 C 2289, 2003 WL 22494790, at *2-3 (N.D. Ill. Nov. 4, 2003), the claim boils down to breach of contract, which is already alleged in the Second Amended Complaint.  The claim for breach of the implied covenant of good faith and fair dealing, then, is superfluous.  Count V will be dismissed with prejudice.

**E.   Count VI (Franchise Disclosure Act)**

Count VI alleges that Cingular violated the Illinois Franchise Disclosure Act (the "Act").  The Act applies only to franchises; a franchise is defined as "a contract or agreement . . . by which: (a) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services, under a marketing plan . . . prescribed . . . by a franchisor; and (b) the operation of the franchisee's business pursuant to such plan . . . is substantially associated with the franchisor's trademark . . .;

and (c) the person granted the right to engage in such business is required to pay, directly, or indirectly, a franchise fee of $500 or more." 815 ILCS 705/3(1).

As we noted in a previous opinion, the 1999 Agreement specifically states that Cingular and Airborne "acknowledge and agree that their agency relationship arising from this Agreement does not constitute or create a general agency, joint venture, partnership, employment relationship <u>or franchise</u> between them." The Second Amended Complaint, however, alleges that the Agreement (presumably referring to the 1997 and 1999 Agreements) did in fact constitute a franchise agreement. Plaintiffs allege that by virtue of the Agreement, Airborne was granted the right to sell Cingular's products and services; the operation of Airborne was substantially associated with Cingular's trademark; and that Airborne was required to directly pay Cingular a $1000 franchise fee for the right to sell Cingular's products and services. Accordingly, Count VI states a claim for violation of the Act and will not be dismissed. <u>See generally</u> <u>Brenkman v. Belmont Mktg., Inc.</u>, 410 N.E.2d 500, 503 (Ill. App. Ct. 1980) ("None of the criteria set forth in the [Act] make the subjective intent of the parties a determinative factor in identifying a franchise relation. Rather, by statutory definition, a franchise exists where an agreement meets three objective criteria.").

## CONCLUSION

The motion of defendant Southwestern Bell Mobile Systems, LLC d/b/a Cingular Wireless to dismiss the Second Amended Complaint is granted in part and denied in part.  Count I is dismissed with prejudice as to plaintiff Calderon, but without prejudice as to plaintiff Airborne.  Count IV is dismissed without prejudice as to the allegations concerning the 1997 and 1999 Authorized Dealer Agreements, but is dismissed with prejudice as to any other purported breaches of contract.  Counts II, III, and V are dismissed with prejudice.  The motion is denied as to Count VI.

Plaintiffs may file a third amended complaint by July 15, 2005, and are once again advised that the amendment must comply with the pleading requirements outlined in this opinion.  If the third amended complaint does not do so, it will be dismissed summarily with prejudice.

DATE:     June 23, 2005

ENTER:    _____

John F. Grady, United States District Judge